NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CIESTA FREY, individually and as Administratrix of the Estate of James L. Frey, Deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>DONALD J. MYKULAK, M.D., SKYLANDS UROLOGY GROUP, P.C., PHYSICIANS JOHN DOE, ONE THROUGH TEN and JOHN DOE PROFESSIONAL CORPORATION, ONE THROUGH TEN,<br><br>        Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-CV-5370 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon Defendants Donald J. Mykulak, M.D. and Skylands Urology Group, P.C.'s ("Defendants") motion *in limine* to preclude Plaintiff Ciesta J. Frey's ("Plaintiff") expert, Robert I. Lewis, D.O. ("Dr. Lewis") from testifying that the handwriting of NMP22 test entries made on James Frey, Sr.'s ("Mr. Frey") uranalysis Form "looks identical"; Plaintiff's motion *in limine* to preclude Defendants' expert, Arnold Baskies, M.D. ("Dr. Baskies") from offering standard of care testimony at trial; and Plaintiff's motion *in limine* to preclude Defendants' expert, David C. Saypol, M.D. ("Saypol") from offering causation testimony at trial. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the

submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion to preclude Dr. Lewis from providing opinion testimony that the handwriting of NMP22 entries on Mr. Frey's urinalysis form "looks identical" is **granted**; Plaintiff's motion to preclude Defendants' expert Dr. Baskies from offering standard of care testimony is **denied**; and Plaintiff's motion to preclude Defendants' expert Dr. Saypol from offering causation testimony is **denied**.

## I.   BACKGROUND[1]

Currently before the court is a medical malpractice action filed on behalf of Mr. Frey, deceased. Plaintiff claims that Defendants failed to diagnose and treat Mr. Frey's bladder cancer from September 23, 2003, through October 22, 2004. Plaintiff further asserts that as a result of the delay in the diagnosis and treatment of Mr. Frey, his bladder cancer was caused to progressively worsen, metastasize, permeate his bladder wall and invade his prostate. Mr. Frey died on December 30, 2004.

Mr. Frey was a patient of Skylands Urology Group, P.C. for various problems since May of 1999. Defendant, Donald J. Mykulak, M.D. ("Dr. Mykulak") was responsible for the urological care rendered to Mr. Frey from September 23, 2003, until Mr. Frey's death on December 30, 2004. Mr. Frey was evaluated by Dr. Mykulak nine (9) times over a period of thirteen (13) months. Dr. Mykulak first evaluated Mr. Frey on September 23, 2003, and noted that a CT scan performed on September 4, 2003, showed bladder wall thickening and persistent hematuria. Defendants claim that

---

[1] The facts set forth in this Opinion are taken from the statements in the parties' respective moving papers.

to a reasonable degree of medical probability, Mr. Frey's life threatening bladder malignancy remained sequestered beneath the bladder's mucosal surface. The malignancy was cystoscopically unrecognizable until sometime between April or May of 2004 and the fall of 2004, at which point it broke through the surface and became cystoscopically visible but beyond surgical and chemotherapeutic cure. Defendants assert that Dr. Mykulak relied upon NMP22 tests to rule out the possibility of bladder cancer and that the care provided by Dr. Mykulak was appropriate.

Plaintiff alleges that Dr. Mykulak did not rely on NMP22 tests; that Dr. Mykulak's records of the tests are not true and accurate. Plaintiff claims that Dr. Mykulak failed to properly evaluate Mr. Frey's persistent hematuria, irregular urine cytology, and questionable bladder mass. In addition, Plaintiff alleges that during the period that Dr. Mykulak was responsible for Mr. Frey's care, no cystoscopy was performed nor was the bladder mass, known to be visible on September 23, 2003, when Mr. Frey first visited Dr. Mykulak, biopsied.

## II.   DISCUSSION

Before the Court are three *in limine* motions: 1) Defendants' motion to preclude Plaintiff's expert Dr. Lewis from offering testimony regarding the likeness of NMP22 test entries on Mr. Frey's urinalysis form; 2) Plaintiff's motion to preclude Defendants' expert Dr. Baskies from offering standard of care testimony; and 3) Plaintiff's motion to preclude Defendants' expert Dr. Saypol from offering causation testimony. Defendants' motion is **granted**. Both of Plaintiff's motions are **denied**.

A. <u>Legal Standard Governing the Admission of Expert Testimony</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 has three requirements: (1) the witness must be qualified to be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741-43 (3d Cir. 1994). These three requirements are commonly referred to as qualification, reliability and fit. <u>Schneider ex rel. Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003); <u>Reger v. A.I. Dupont Hosp. for Children of the Nemours Found.</u>, 259 Fed. Appx. 499, 500 (3d Cir. 2008). Fed. R. Evid. 104 and 702 require a district court, when faced with a proffer of expert testimony, to make a preliminary determination as to whether all of the elements of Rule 702 are satisfied by a preponderance of the evidence. <u>Paoli II</u>, 35 F.3d at 741

       i.      <u>Qualification</u>

The qualification element of Rule 702 requires "that the witness possess specialized expertise." <u>Schneider</u>, 320 F.3d at 404. This requirement however, has been interpreted liberally. <u>Paoli II</u>, 35 F.3d at 741. The Third Circuit has explained that "a broad range of knowledge, skills, and training qualify an expert as such. . . . We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." <u>Id.</u> The determination of whether an expert is qualified to testify about a particular topic is a fact-specific inquiry where the Court must look at the proffered expert's background and qualifications, including experience and/or education. <u>See</u> <u>Poust v. Huntleigh Healthcare</u>, 998 F. Supp. 478, 491 (D.N.J. 1998). The Court must then determine if the proffered expert's area of expertise is relevant to the opinion to be rendered such that the opinion will be helpful to the trier of fact. <u>Id.</u> This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts. <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 244 (3d Cir. 2008); <u>Paoli II</u>, 35 F.3d at 741. "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." <u>Holbrook v. Lykes Bros. S.S. Co.</u>, 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters).

ii.     Reliability

When assessing the admissibility of expert testimony, the Supreme Court held that a trial judge faced with expert scientific testimony must perform a gate-keeping function and determine whether the expert is "proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact at issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). The Third Circuit has followed the framework in Daubert and places upon the District Court the task of ensuring that an expert's testimony rests upon a reliable foundation and is relevant to the task at hand.  See In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742-743 (3d Cir. 1994); see also Daubert, 509 U.S. at 597.

To establish "reliability," the testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." Schneider, 320 F.3d at 404 . (citation and internal quotations omitted). "[A]n inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Id. (citation omitted); In order to aid the courts in their gate-keeping function, the Supreme Court in Daubert discussed five factors that could be relevant in determining the reliability of proposed expert testimony. In Downing, the Third Circuit identified three additional relevant factors for a total of eight factors that could be relevant in determining reliability.[2]

---

[2] The Daubert Downing factors are:  (1) whether the theory or technique can be (or has been) tested; (2) whether the theory or technique has been subjected to peer review and publication: (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation:(5) the "general acceptance" of the technique; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and/or (8) the non-judicial uses to which the method has been put. In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 n. 8 (3d Cir. 1994) (citing Daubert, 509 U.S. at 593-94 and U.S. v. Downing, 753 F.2d 1224 (3d Cir. 1985)).

      iii.      <u>Fit</u>

Lastly, Rule 702 requires that "expert testimony must fit the issues in the case" meaning "the expert's testimony must be relevant for the purposed of the case" such that the testimony aids the trier of fact. <u>Schneider</u>, 320 F.3d at404. "Rule 702's 'helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." <u>Daubert</u>, 509 U.S. 591-92. Even if the expert's testimony is scientifically reliable it may still be exclude if it is not relevant for the purpose it is being offered. Likewise, even if the expert's conclusions are founded on strong reliable principles of science, the extrapolation of the experts conclusions and the rendering of an opinion regarding the instant issues must also be scientifically sound. <u>See</u> <u>Paoli</u>, 35 F.3d at 743.

      B.      <u>Defendants' *In Limine* Motion to Preclude Expert Testimony</u>

Plaintiff intends to introduce testimony by Dr. Lewis that the handwriting of NMP22 test entries on Mr. Frey's urinalysis form looks identical." Defendants claim that Plaintiff plans to have Dr. Lewis testify that the NMP22 test entries on Mr. Frey's urinalysis form were written by the same person at the same time based on the allegation that the entries on the form look identical. Defendants correctly point out that there is no evidence establishing Dr. Lewis as a handwriting expert and that his testimony is not the product of reliable principles and methods. Defendants' argument is essentially that Dr. Lewis is not qualified to be a handwriting expert and that his opinion is not reliable with regards to this topic.

Plaintiff's response to Defendants' motion is that Dr. Lewis has not and will not render an opinion regarding when NMP22 test entries were placed on Mr. Frey's urinalysis form. Plaintiff also

7

argues that Dr. Lewis's comment that the "handwriting of each entry looks identical" has been confirmed by Dr. Mykulak in his deposition, that Dr. Lewis does not offer any handwriting analysis and that he does not render opinions for which a handwriting expert would be required.

Defendants' assertion that Dr. Lewis will testify that all entries referring to NMP22 tests made on Mr. Frey's urinalysis form were made at the same time is unfounded. There is no mention of this in Dr. Lewis's report and Plaintiff has stipulated that Dr. Lewis does not and will not render any such opinion. Plaintiff however, is correct that no evidence has been presented to suggest that Dr. Lewis is qualified to testify as a handwriting expert. Dr. Lewis did not use a scientific method to arrive at his conclusion that the entries at issue look identical. Dr. Lewis's handwriting conclusion is merely a non scientific opinion about a matter Defendants correctly asserts should be left to the jury to decide. As non scientific, non expert testimony, Dr. Lewis's conclusion is inappropriate opinion evidence and thus is not fit for the purpose it is being offered and would not assist the jury in its deliberations. Therefore, Dr. Lewis's handwriting conclusion cannot be offered at trial.

        C.        Plaintiff's *In Limine* Motions To Preclude Expert Testimony

Plaintiff seeks to limit Defendants' oncology expert, Dr. Baskies's testimony regarding standard of care and Defendants' urology expert, Dr. Saypol's testimony regarding causation. Plaintiff argues that Dr. Baskies is not qualified to render an opinion regarding standard of care in this case because he is an oncologist and not a urologist. Likewise, Plaintiff contents that Dr. Saypol's expertise is in the wrong area because he is an urologist and not an oncologist.

With respect to both of Plaintiff's motions, Defendants argue that the standard for establishing an expert witness as qualified is liberal. Defendants further argue that the fact that Dr.

Baskies is an oncologist and not a urologist and that Dr. Saypol is a urologist and not an oncologist affects the weight as oppose to the admissibility of their testimony.

The qualification requirement of Rule 702 provides that an expert witness must possess specialized knowledge, skill or expertise. See Schneider, 320 F.3d at 404. This standard has been interpreted liberally meaning "that a broad range of knowledge, skills and training can qualify an expert as such". Paoli II, 35 F.3d at 741. In addition, the Third Circuit has established that "It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters).

As an oncologist, it is probable that Dr. Baskies would have sufficient knowledge and experience to testify regarding the standard of care owed to a patient suspected of having bladder cancer. Similarly, Dr. Saypol as a urologist satisfies the standard to provide expert causation testimony about bladder cancer. Defendants are correct that any issues arising from Dr. Baskies being an oncologist and not an urologist and Dr. Saypol being a urologist and not an oncologist go to the weight of their testimony and not admissibility. Dr. Baskies's and Dr. Saypol's skills and knowledge are relevant to the subjects for which they will be asked testify and they are qualified to provide such testimony. Therefore Plaintiff's motions are **denied**.

### III.  CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' *in limine* motion to preclude Dr. Lewis from providing opinion testimony that the handwriting of NMP22 entries on Mr. Frey's urinalysis form "looks identical" is **granted**; Plaintiff's *in limine* motion to preclude Dr. Baskies's expert testimony regarding standard of care is **denied**; and Plaintiff's *in limine* motion to preclude Dr. Saypol's expert testimony regarding causation is **denied**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       September  25th , 2008
Orig.:       Clerk
cc:            All Counsel of Record
                Hon. Mark Falk, U.S.M.J.
                File